UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAGBIR SINGH,<br><br>Petitioner,<br>v.<br><br>MARKWAYNE MULLIN et al.,<br><br>Respondents. | CASE NO. 2:26-cv-04112-LK<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on Petitioner Jagbir Singh's Petition for Writ of Habeas Corpus. Dkt. No. 1. For the reasons described below, the Court grants the petition.[1]

## I. BACKGROUND

Petitioner is a native of India who entered the United States near Mexicali on or about November 29, 2024 without inspection. Dkt. No. 1 at 2. He was apprehended by U.S. Customs and Border Patrol, detained for more than two weeks, and paroled into the United States on

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized by statute").

December 18, 2024 under section § 212(d)(5)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(d)(5)(A), and 8 C.F.R. § 212.5. Dkt. No. 6 at 2. He was issued a form notifying him that his parole authorization was valid for one year. Dkt. No. 6 at 2; Dkt. No. 5-2 at 2. Petitioner subsequently applied for asylum, and his application remains pending. Dkt. No. 1 at 2.

Petitioner's parole automatically terminated on December 18, 2025 under 8 C.F.R. § 212.5(e). Dkt. No. 6 at 2. On January 16, 2026, Petitioner was enrolled in the Intensive Supervision Appearance Program, an Alternative to Detention ("ATD") monitoring program, and instructed to relay his location when prompted by the program. *Id.* Deportation Officer Nhat Truong states that Petitioner did not relay his location three times when prompted in February, March, and May 2026. *Id.* at 3. According to Petitioner, "[w]hile ICE may rely on the three dates in which its phone tracker did not ping Petitioner's phone, those dates were several months before Petitioner's detention and following those dates," he moved to Seattle to live with relatives and promptly checked in with ICE, who "placed Petitioner on an ankle monitor, which he did not tamper with, remove, or otherwise have any issues with." Dkt. No. 1 at 2, 5.

On October 21, 2026, at a scheduled check-in with U.S. Immigration and Customs Enforcement ("ICE"), "ICE agents removed Petitioner's ankle monitor and took him into custody." *Id.* at 2. The same day, Enforcement and Removal Operations served Petitioner with a Notice to Appear ("NTA"), checking the box that he is a noncitizen "present in the United States who has not been admitted or paroled" and charging him with removability under INA § 212(a)(7)(A)(i), 8 U.S.C. § 1186(a)(7)(A)(i), as a noncitizen "present in the United States who has not been admitted or paroled." Dkt. No. 6 at 3; Dkt. No. 5-4 at 2, 5. Petitioner is currently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 6 at 3.

Petitioner filed his habeas petition on October 26, 2026. Dkt. No. 1. Respondents[2] filed their return on November 10, 2026, Dkt. No. 4, and Petitioner filed his traverse on November 11, 2026, Dkt. No. 7.

## II. DISCUSSION

Petitioner asserts that Respondents violated the Due Process Clause of the Fifth Amendment, the Administrative Procedure Act, and the INA by incorrectly detaining him under Section 1225(b) and by failing to provide him with any pre-deprivation process. Dkt. No. 1 at 7–10. He seeks immediate release from custody or, alternatively, a bond hearing. *Id.* at 10–11. Respondents argue that Petitioner's parole automatically terminated on December 18, 2025, he violated the terms of his ATD program, and he is lawfully detained under 8 U.S.C. § 1225(b). Dkt. No. 4 at 1–2.

### A. Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its

---

[2] Although the warden of the NWIPC has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. Petitioner has Established a Due Process Violation**

Petitioner contends that he is detained under 8 U.S.C. § 1226(a), not Section 1225(b), because he "was not arrested at the border; he was detained in October 2026 after living in this country for several years." Dkt. No. 1 at 4. Respondents disagree, arguing that "an arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked." Dkt. No. 4 at 2 (citing 8 C.F.R. § 1.2).

Assuming without deciding that under these circumstances, the governing statute is 8 U.S.C. § 1225(b)(2), Petitioner has demonstrated that the government failed to follow federal law in detaining him.

1. Applicability of the Due Process Clause

For the reasons set forth in the Court's orders in *Dieng v. Hermosillo*, 2:26-cv-00190-LK, 2026 WL 411857, at *3–5 (W.D. Wash. Feb. 13, 2026), and *Albornoz v. Hermosillo*, No. 2:25-

CV-02713-LK, 2026 WL 444983, at *3–4 (W.D. Wash. Feb. 17, 2026), the Court finds that the Due Process Clause is applicable in this case and adopts the analysis from those orders. The Court also reiterates that humanitarian parole under Section 1225(b) can establish the same kinds of liberty interests described in *Morrissey v. Brewer*, 408 U.S. 471 (1972). *Flores Torres v. Hermosillo*, No. 2:25-CV-02687-LK, 2026 WL 145715, at *5 (W.D. Wash. Jan. 20, 2026) (collecting cases). Here, Petitioner has established such an interest. He has established ties here: he has lived here for two years, residing with relatives in California and Washington and establishing a community here. Dkt. No. 1 at 2. He has no criminal history. *Id.* at 3.

Because the constitutional process required for deprivation of a noncitizen's liberty interests is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place," *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022), the Court addresses the statutory process required here.

2. <u>Statutory Violation</u>

Section 1182 provides that parole may be granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A). The implementing regulations include another requirement for parole: the noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). In other words, if a noncitizen has been granted parole, it means that a DHS official with authority decided that there were either "urgent humanitarian reasons" or "significant public benefit" justifying the parole of that individual, and that the individual did not pose a security or flight risk.

Parole automatically terminates if the noncitizen departs from the United States or "at the expiration of the time for which parole was authorized," and "no written notice shall be required" for automatic termination. 8 C.F.R. § 212.5(e)(1). Otherwise, for parole to be terminated, (1) "the purpose for which parole was authorized" must have been accomplished or a DHS official with

authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States"; and (2) written notice must be provided to the noncitizen. 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled[.]").

Once a noncitizen's parole has terminated—either automatically or on notice—"any order of exclusion, deportation, or removal previously entered shall be executed." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 C.F.R. § 212.5(e)(1) ("[T]he [noncitizen] shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required."). "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] shall again be released on parole unless in the opinion of [a DHS official with authority] the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i).

Here, Petitioner's parole terminated automatically in December 2025. Dkt. No. 6 at 2. At that point, the government was required to execute any order of exclusion, deportation, or removal "within a reasonable time"; if that could not be done, they were required to release him on parole again "unless in the opinion of [a DHS official with authority,] the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i); *see also id.* ("[T]he [noncitizen] *shall* again be released on parole[.]" (emphasis added)). No order of exclusion, deportation, or removal has been issued or executed. Under the circumstances in this case—where Petitioner's first grant of parole expired nearly a year ago—the Court finds that Respondents have not effectuated any such order within a reasonable time. Furthermore, Respondents have put forth no evidence that "in the opinion of [a DHS official with authority,] the public interest requires that [Petitioner] be continued in custody." Therefore, 8 C.F.R. § 212.5(e)(2)(i) required Petitioner's

return to parole, and his detention violates ICE's own regulations. *See Dieng v. Hermosillo*, No. 2:26-CV-00190-LK, 2026 WL 411857, at *6 (W.D. Wash. Feb. 13, 2026) (section 212.5(e)(2)(i) required petitioner's return to parole where ICE violated its own regulations); *O.F.B. v. Maldonado*, No. 25-CV-6336 (HG), 2025 WL 3277677, at *6 (E.D.N.Y. Nov. 25, 2025) ("Under these circumstances, the applicable regulatory provision requires that Petitioner 'shall again be released on parole' unless ICE has made an individualized determination that 'the public interest requires that the alien be continued in custody.' . . . Here, because no such determination has been made, Petitioner is being detained in violation of the agency's own regulations.").

If ICE instead extended Petitioner's parole, then it could only be terminated "on notice" pursuant to 8 C.F.R. § 212.5(e)(2), which requires that (1) "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States"; and (2) written notice must be provided to the noncitizen. 8 C.F.R. § 212.5(e)(2)(i). Respondents argue that the NTA provided sufficient notice that parole was (again) terminated in October 2026. Dkt. No. 4 at 3 (citing 8 C.F.R. § 212.5(e)(2)(i)). However, Respondents have not put forth any evidence that "the purpose for which parole was authorized" has been accomplished or that a relevant official opined that "neither humanitarian reasons nor public benefit warrants the continued presence" of Petitioner in the United States. *See* Dkt. No. 5-5 at 2–3; 8 C.F.R. § 212.5(a), (e)(2)(i).

Based on the above analysis, the Court concludes that Respondents violated Petitioner's statutory rights in detaining him, whether his parole has terminated or not. *See Gabriel v. Bondi*, No. 25-CV-4298 (KMM/EMB), 2025 WL 3443584, at *6 (D. Minn. Dec. 1, 2025) ("Without any suggestion that such a determination [as that required under the statute and regulation] occurred, Respondents could not have complied with § 1182(d)(5)(A) and Part 212.5(e)(2)(i) in revoking

Petitioner's parole," and accordingly, "the revocation, and[] . . . Petitioner's detention[] is unlawful.").[3]

3. <u>Due Process Violation</u>

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews*, 424 U.S. at 332. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In analyzing a procedural due process claim, the court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge*. *Id.* at 1179–80.

*(a) Constitutionally Protected Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Noncitizens "who have once passed through our gates, even illegally," are entitled

[3] *See also Delfin-Ricardo v. Noem*, No. 26-CV-136-RSH-BJW, 2026 WL 353357, at *2 (S.D. Cal. Feb. 9, 2026) ("Courts have determined, in cases where DHS fails to follow its own regulations in revoking humanitarian parole, that the resulting detention is unlawful and the petitioner's release should be ordered."); *Savane v. Francis*, 801 F. Supp. 3d 483, 491–92 (S.D.N.Y. 2025) ("Respondents' revocation of . . . parole under § 1182(d)(5)(A) without any process violated Petitioner's due process rights . . . because [Respondents] did not comply with the statutorily required process for revoking that parole."); *Orellana v. Francis*, No. 25-CV-04212 (OEM), 2025 WL 2402780, at *7 (E.D.N.Y. Aug. 19, 2025) (reasoning that "by failing to lawfully revoke [Petitioner's] parole, Respondents lacked the authority to arrest Petitioner"), *reconsideration denied in relevant part*, No. 25-CV-04212 (OEM), 2025 WL 2822640, at *4 (E.D.N.Y. Oct. 3, 2025) (finding again that "by failing to lawfully revoke [Petitioner's] parole, Respondents lacked the authority to arrest Petitioner" and reasoning "[a]s such, the revocation of Petitioner's parole was unlawful and his resulting detention invalid"); *Zavorin v. Wamsley*, No. 2:26-CV-00173-DGE, 2026 WL 309733, at *4 (W.D. Wash. Feb. 5, 2026) (granting habeas petition when Respondents revoked Petitioner's humanitarian parole without following the procedural requirements set forth in 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e)(2)(i)).

to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[ ] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop . . . ties" in this country, "his constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

As explained above, Petitioner possesses a protected interest in his "continued liberty." *Morrissey*, 408 U.S. at 481–84 (citation modified).

*(b) Procedural Protections*

To determine what procedures are constitutionally sufficient to protect petitioner's liberty interest, courts analyze the three *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that Mathews' three-part test applies in "the immigration detention context," 53 F.4th at 1206–07, and

district courts have applied the *Mathews* test in that context, *see*, *e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

With respect to the first factor, as discussed above, Petitioner has a private interest in remaining out of immigration detention. *See Morrissey*, 408 U.S. at 482. Despite his liberty interest being "indeterminate" under humanitarian parole, that interest "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the [noncitizen] and often on others." *Id.* This factor favors Petitioner.

Turning to the second factor, for the reasons stated in this Court's order in *Flores Torres*, due process at least requires that (1) the government justify the basis for re-detention, as prescribed by the statute and its implementing regulations, and (2) Petitioner be given "the opportunity to be heard" with respect to the government's basis for re-detention under the applicable statutory and regulatory framework "at a meaningful time and in a meaningful manner." 2026 WL 145715, at *7 (citation modified). Here, as discussed above, the government did not follow the procedures required by its own regulations—whether or not Petitioner's parole was terminated.[4] The risk of erroneous deprivation is significant where the government fails to follow its own procedures, thus depriving the noncitizen of process due prior to being detained. "[T]he additional procedural

[4] *See Lopez v. Noem*, No. CV-GLR-25-3662, 2025 WL 3496195, at *5 (D. Md. Dec. 5, 2025) (finding that there was a high risk of erroneous deprivation because "the Government's failure to comply with its own agency regulations necessarily deprive[d] [petitioner] of the procedural process due her, rendering her current detention unlawful"); *J.L.R.P. v. Wofford*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *9 (E.D. Cal. Nov. 14, 2025) (finding that the risk of erroneous deprivation was high where "ICE revoked petitioner's release on the grounds that his removal was reasonably foreseeable, but it did not provide petitioner the process required by its own regulations, it forced petitioner to file a habeas petition to obtain relief, and [it] has failed to identify any evidence that petitioner's removal was actually reasonably foreseeable at any point"); *Salazar v. Casey*, No. 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025) ("[T]he risk of an erroneous deprivation of [petitioner's] interest [in remaining out of custody pursuant to her humanitarian parole] is high as Petitioner's parole was revoked without providing her a reason for revocation or giving her an opportunity to be heard"); *Munoz Materano v. Arteta*, No. 25-CV-6137-ER, 2025 WL 2630826, at *14 (S.D.N.Y. Sept. 12, 2025) (finding a risk of erroneous deprivation where "Respondents provide[d] no indication that an individualized determination was made as to the revocation of [Petitioner's] parole; nor d[id] they articulate, even now, either that the purpose for which [Petitioner's] parole was authorized has been accomplished, [ ]or that neither humanitarian reasons nor public benefit warrants his continued presence in the United States.").

safeguards identified in 8 C.F.R. § 212.5 are not only valuable for preventing the erroneous deprivation of an important interest, they are required by the Section 1225 statutory scheme[.]" *O.F.B.*, 2025 WL 3277677, at *7; *see also de la Rosa Espinoza v. Guadian*, No. 20-3126-JWL, 2020 WL 3452967, at *8 (D. Kan. June 24, 2020) ("[T]he applicable statutory process shapes Petitioner's procedural due-process rights[.]"). This factor favors Petitioner.

With respect to the last factor, "the government's interest in efficient administration of the immigration laws at the border is not impermissibly burdened by affording the process laid out in 8 C.F.R. § 212.5 because it is required to follow its own regulations." *O.F.B.*, 2025 WL 3277677, at *7 (citation modified). Therefore, this factor too weighs in favor of Petitioner.

Under *Mathews*, the Court finds that Respondents failed to provide Petitioner with the procedures due to him under the Due Process Clause, and accordingly, his detention is unlawful.

## III. CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus, Dkt. No. 1, is GRANTED, and the Court ORDERS as follows:

1. Respondents shall release Singh from custody within 24 hours of this Order, subject to the terms of his most recent parole agreement;
2. The parties shall file a Joint Status Report by November 23, 2026, confirming that Singh has been released;
3. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr.* Ctr., No. 24-2990, 2026 WL 263483, at *10 (3d Cir. Feb. 2, 2026) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *Vacchio v. Ashcroft*, 404 F.3d 663, 668

(2d Cir. 2005) (same); *Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009) (granting fee award to immigration detainee who prevailed on habeas petition); *Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context); *but see Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023) (holding that EAJA does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions); *Obando-Segura v. Garland*, 999 F.3d 190, 197 (4th Cir. 2021) (same). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 20th day of November, 2026.

Lauren King
United States District Judge